PETER CORN v. THE STATE.

1. PRACTICE—BILL OF EXCEPTIONS.—An erroneous charge should be objected to when given, or other charges asked at the time, so as to afford the court opportunity of correcting the error complained of.
2. PRACTICE—PRINCIPALS.—On the trial of a defendant separately indicted for theft, it is not error to charge the jury that "all persons who are present when an offense is committed, and who knowingly aid or encourage its commission, are alike guilty of the offense.
3. INTEREST IN STOLEN PROPERTY.—That the party accused of theft of cattle may have been paid only for gathering and delivering the stolen cattle, is a sufficient advantage to the accused to support the charge of theft, if in other respects the taking constitutes theft.
4. MARK AND BRAND.—A mark and brand, to be evidence of property, should be recorded.
5. AUTHORITY TO MANAGE STOCK.—Evidence of authority to gather, drive, or otherwise handle stock, may be given by the owner filing with the "inspector of hides and animals" a list of his recorded marks and brands, certified by the district clerk, to which certified list may be attached the names of such persons so authorized. (Pas. Dig., art. 6561.)

APPEAL from Gillespie. Tried below before the Hon. J. N. Everett.

Peter Corn was indicted for theft of a steer on 28th February, 1873.

The evidence on the trial is set out in the opinion. The charges complained of are as follows:

"4. All persons who are present when an offense is committed, and who knowingly aid or encourage its commission, are alike guilty of the offense.

"6. The taking is complete when the property is reduced to the actual custody of the taker, with the intent above mentioned.

"7. The benefit to the taker in a case of theft may be any pecuniary profit which the taker gains from the property taken, though it may be but a small part of the value of the property taken."

*Hugh Duffee*, for appellant.

*George Clark, Attorney General*, for the State.

REEVES, ASSOCIATE JUSTICE. — This is an indictment against appellant, charging him with the theft of a steer, the property of one Gottlieb Fischer.

It appears from the evidence that the range of this animal was on White Oak creek, in Gillespie and Kerr counties. The animal was found in a herd of cattle, which had been gathered by appellant and others in his employ, in Gillespie county, and which defendant said he was gathering for Quinlan & Crawford, and was driving the herd to their pen, or where they herded cattle, on Turkey creek, in Kerr county, distant about twenty-five miles from the place where the steer was first seen in defendant's possession, and among the cattle he was driving. The witnesses stated that they had seen the steer in Quinlan & Crawford's herd about ten days after the time they saw him among the cattle the defendant was driving.

The appellant was tried and convicted, and fined one hundred dollars, and imprisoned in the county jail fourteen days by the verdict of a jury. His motion for a new trial was refused, and he appeals, and assigns as grounds for reversing the judgment that the court erred in the general charge to the jury, by which they were misled, and their attention called from the law governing the case, and that the charge was not warranted by the evidence. The particular portions of the charge alleged to be erroneous are set out in the motion for a new trial and in the assignment of errors, and will be further noticed in connection with the evidence before the jury.

The general charge, apart from the portions objected to and assigned for error, consists principally in defining the offense of theft, and in stating what the State must prove to warrant the jury in convicting the defendant, and general propositions of law applicable to the case, as shown by the evidence. No exception was taken to the charge at the time it was given, nor was any charge asked by the defendant, as should have been done, if the charge was thought to be erroneous, affording the opportunity for correction, if the court had erred. But we find no error in the charge, in view of the evidence adduced on the trial, of which appellant can complain.

The fourth paragraph in the charge, and which is now complained of, is as follows: "All persons who are present when an offense is committed, and who knowingly aid or encourage its commission, are alike guilty of the offense."

It is true, as contended, there was no charge against appellant and others for the alleged theft, nor was it necessary that there should have been, in order to sustain the conviction against the defendant. The indictment is against appellant only, and the evidence shows that he and the parties in his employ were engaged in collecting stock for Quinlan & Crawford; and though the other parties may have been engaged in an unlawful act, for which they

were not indicted, appellant could not object on that ground.

The court further charged the jury, that "the taking is complete when the property is reduced to the actual custody of the taker with the intention above-mentioned." This part of the charge refers to the paragraph preceding it, to the effect that stock running at large in the range is, in law, considered as in the possession of the owner, and the taking, as mentioned in defining theft, would be from the possession of the owner. It is not perceived how it could have misled or confused the jury, in view of the evidence before them. The steer was driven from Gillespie county to Kerr county, the distance being about twenty-five miles from the range to Quinlan & Crawford's, where the animal was seen some ten days after the taking.

It is further objected that the court charged the jury that "the benefit of the taker, in a case of theft, may be any pecuniary profit which the taker gains from the property taken, though it may be but a small part of the value of the property taken."

The evidence leaves it uncertain as to the precise character of defendant's employment. The testimony of one witness is that he told him that he was employed by Quinlan and Crawford to gather cattle for them, and not for himself. This witness further states that it was customary to make contracts for the delivery of cattle, and gather them for certain pay per head, as the witness expresses it. One of the defendant's witnesses says they were engaged about two weeks in gathering the cattle, but says nothing about the contract between defendant and Quinlan and Crawford, or the amount to be paid, or how it was to be paid. Neither Quinlan nor Crawford was called to testify, and we are left to form an opinion on defective or presumptive evidence in this regard. As the custom was to pay for gathering stock by the head, the jury, in the absence of other testimony, would most probably arrive at the con-

clusion that the defendant was paid for his services according to custom, and, in that event, he was interested to increase the number, as thereby he increased his pay. This conclusion might have been drawn by the jury from the evidence, or rather from the want of evidence, explaining the terms of the undertaking. The court, influenced, perhaps, by this consideration, very properly, as we think, charged the jury in the language cited.

It was a question of fact for the jury, under the instructions of the court, whether the intention of the defendant was, as charged in the indictment, to benefit himself by depriving the owner of his property. The jury, in effect, find that the felonious intent did exist; and there being evidence to support the finding, we cannot say that the court erred in overruling the motion for a new trial.

It was not shown that Quinlan and Crawford were the owners of the cattle gathered by the defendant, nor that they set up any claim to the animal in question. The cattle were delivered in Kerr county when Quinlan and Crawford were not present; but, as the witness says, the cattle were turned over to the charge of their hands. It is simply shown that Quinlan and Crawford employed the defendant to gather a herd of cattle on the Perdenalis river. It does not appear that Quinlan and Crawford had a brand, or that it had been recorded as required by the statute. (1 Pas. Dig., chap. "Marks & Brands," art. 4655.) It is not shown that defendant had proper authority to gather this stock, nor how they were to be identified, if not by the brands. The act "to encourage stock raising, and for the protection of stock raisers," (Pas. Dig., art. 6561,) provides: "That any stock owner having marks and brands recorded in the office of the district clerk may file with the inspector of hides and animals a list of his recorded marks and brands, certified to by the clerk of the District Court, and under his seal, to which certified list shall be attached the names of any person or persons whom said stock owner may wish

to authorize to gather, drive, or otherwise handle his stock; and the filing of said list with the inspector of hides and animals shall be deemed sufficient authority to allow any person named in said list to gather, drive, or otherwise handle any animals of the marks and brands therein described."

The defendant appears from the evidence to have violated the law and incurred its penalty without legal excuse or justification.

Judgment affirmed.                                AFFIRMED.